IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Marriage of JANAE NICOLE ASHBY, | No. 88400-0-I |
| Appellant, | |
| and | UNPUBLISHED OPINION |
| MICHAEL JEREMY ASHBY, | |
| Respondent. | |

BOWMAN, A.C.J. — Janae Ashby NKA Janae Dugar appeals the superior court's order denying her motion to revise the commissioner's order holding her in contempt for failure to follow her parenting plan with Michael Ashby. Because substantial evidence supports the contempt findings, the superior court did not abuse its discretion by denying Dugar's motion to revise, and we affirm. We also award Ashby attorney fees and costs on appeal.

FACTS

Dugar and Ashby coparent two minor children under a February 2019 court-approved permanent parenting plan. The plan provides that the children reside with Dugar mostly and with Ashby at designated times. The parenting plan contains three phases. Under phase III, Ashby's

> residential time shall alternate weekends from after school on Friday and/or daycare (or from mother's at 3:00 p.m. if no school) to Sunday at 6:00 p.m. Father to pick up the girls from school and/or daycare at the beginning of the visits (or at the mother's residence at 3:00 p.m. if no school).

Because Ashby has been diagnosed with epilepsy and meningitis, the parties

also included an "Emergency/temporary RCW 26.09.191 Restrictions" provision in the parenting plan. The provision says, "In the event that Mr. Ashby experiences a medical emergency such as seizures or meningitis attacks his residential time shall be temporarily suspended until further order of the court."

In 2024, Dugar twice tried to change the residential provisions of the parenting plan. First, in June, Dugar alleged Ashby was stalking her and withheld visitation.[1] Ashby explained that he was not stalking Dugar; he was going to her home to pick up their children for scheduled visitation. At a hearing on October 6, the court held Dugar in contempt for violating the parenting plan. Then, on December 2, Dugar petitioned to modify the parenting plan and asked for an immediate civil protection order (CPO) against Ashby. The court denied both requests.

On December 6, 2024, Ashby drove from his home in Bow to Renton to get the kids for his weekend visitation. He picked up his younger daughter at her school and then drove to get his older daughter from a gymnastics meet. When he arrived at the gym, Dugar and her attorney were both present. The gymnastics coach called the police and paramedics to report that she was "concerned about [Ashby]'s seizure disorder and him driving home." She reported that Ashby had slurred speech.

The paramedics arrived and examined Ashby. They cleared him, determining that he was not experiencing a medical emergency. But they noted that he appeared to be "lethargic and confused" and displayed behaviors

[1] Dugar also sought a domestic violence protection order. A court commissioner granted her temporary order but ultimately denied her request for a permanent order.

2

consistent with "possible mental health issues." The children refused to leave with Ashby, so the police "encouraged" him to let the girls go with their mother "to maintain the peace." Ashby agreed and drove home without his daughters.

On December 19, 2024, Dugar informed Ashby through counsel that she would be suspending his parental time under the emergency provision of their parenting plan because he was exhibiting "objective symptoms of partial-complex or focal seizures as observed and documented by third parties." Dugar withheld visitation on the weekends of December 20, 2024, and January 3, 2025.

On January 6, 2025, Ashby sought a contempt order against Dugar for violating the parenting plan. In support of his motion, Ashby filed a declaration. He explained that while he has health issues that can cause seizures, he is not currently experiencing "physiological issues" and is "fully able" to take care of himself and his children. Ashby alleged that Dugar has been "playing games and interfering with [his] residential time for the past year." As an example, Ashby described the incident that occurred at the gym on December 6, 2024. He said that Dugar and her attorney interfered with picking up his daughters for scheduled visitation and "coordinated with the gym coach to allege [he] was not well or was having seizures." Ashby also provided medical records stating that he was taking his prescribed medication, that his epilepsy was "well-controlled," and that he had not experienced a seizure in over five years.

Dugar did not dispute that she refused Ashby residential visits after the December 6 incident but said that she did so under the emergency provision in the parenting plan. Dugar denied taking part in the incident and described it as "entirely out of [her] control." She claimed that the gymnastics staff "witnessed

3

[Ashby] having seizure symptoms, and subsequently called 911." Dugar insisted that she came to the school "only after the call to 911."

A court commissioner held a hearing on February 26, 2025. On February 28, the commissioner entered a contempt order, finding Dugar failed to follow the residential provisions of the parenting plan. The court found that the parties were in phase III of the parenting plan and that the schedule called for Ashby to have residential time on December 6, December 20, and January 3.

As to the December 6 incident, the court found:

> [W]hen Father went to pick-up the children. He picked up one child and then when he went to go pick up the second child school officials called 911 when Father tried to drive with the children believing that he was experiencing a mental health issue. Ultimately, per the [police] log, firefighters cleared Father of any issues and no further aid was provided, offered, or needed. Due to the situation and suggested of law enforcement, Father agreed to have the children go with Mother.

And it found Dugar in contempt, explaining:

> The parenting plan Section 15 states that "in the event that Mr. Ashby experiences a medical emergency". While this Court also reviewed [Ashby's doctor]'s chart note of the visit [o]n December 26, 2024, she did not find that he was undergoing focal seizures. Moreover, the [police] report states that Father was checked out and he was medically cleared. No one indicated that Father could not drive or that he needed to seek further medical support. The Court recognizes the best interests of the child, but also notes that use of this provision by Mother as a sword and not a shield to protect the children.

> The Court further finds bad faith given the history of the parties in this case and Mother's finding of contempt on October 1, 2024, the denial of adequate cause on December 27, 2024, the denial of the *ex parte* restraining order against Father on December 5, 2024, [and] the denial of Mother's CPO on December 30, 2024. . . . In all of these, Mother has not prevailed and the Court has referred the parties to going back to the underlying parenting plan and have not restricted Father's time.

The court ordered Dugar to allow make-up time for Ashby's three missed weekends. And because this was the second finding of contempt against Dugar, the court imposed a penalty of $250. Finally, the court awarded Ashby attorney fees.

Dugar moved to revise the commissioner's order of contempt. On May 1, 2024, a superior court judge held oral argument on her motion. It denied the motion and affirmed the commissioner's order. On May 9, Dugar moved for reconsideration of the superior court's denial of her motion to revise. The superior court denied her motion.

Dugar appeals.

ANALYSIS

Dugar argues the superior court abused its discretion by affirming the commissioner's order holding her in contempt of the parenting plan. Both parties request attorney fees on appeal. We address each argument in turn.

1. Contempt

Dugar argues the superior court abused its discretion by denying her motion to revise. She contends the commissioner erred by holding her in contempt of the parenting plan and that the court's findings are not supported by substantial evidence. We disagree.

A commissioner's ruling is subject to revision by the superior court. RCW 26.12.215; RCW 2.24.050. On revision, the superior court reviews the commissioner's findings of fact and conclusions of law de novo based on the evidence and issues presented to the commissioner. *In re Marriage of Moody*, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999). Once the superior court decides

on revision, the appeal is taken from the superior court's decision, not the commissioner's. *In re Est. of Little*, 9 Wn. App. 2d 262, 274, 444 P.3d 23 (2019) (citing *State v. Ramer*, 151 Wn.2d 106, 113, 86 P.3d 132 (2004)). We review a superior court's decision in a contempt proceeding for an abuse of discretion. *In re Marriage of James*, 79 Wn. App. 436, 439-40, 903 P.2d 470 (1995). A superior court abuses its discretion by exercising it on untenable grounds or for untenable reasons. *Id.* at 440.

We review the superior court's contempt findings for substantial evidence. *In re Marriage of Myers*, 123 Wn. App. 889, 893, 99 P.3d 398 (2004). Evidence is substantial if it is sufficient to persuade a fair-minded, rational person of the declared premise. *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). The party challenging a finding of fact bears the burden of showing that substantial evidence does not support the finding. *Nordstrom Credit, Inc. v. Dep't of Revenue*, 120 Wn.2d 935, 939-40, 845 P.2d 1331 (1993). Unchallenged facts are verities on appeal. *In re Est. of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). And we do not review credibility determinations on appeal because "trial judges and court commissioners routinely hear family law matters" and "are better equipped to make credibility determinations." *In re Marriage of Rideout*, 150 Wn.2d 337, 351-52, 77 P.3d 1174 (2003).

A parent seeking a contempt order for another parent's failure to comply with a parenting plan must establish the contemnor's bad faith by a preponderance of the evidence. *James*, 79 Wn. App. at 442. Parents who refuse to perform the duties imposed by a parenting plan are per se acting in bad faith. RCW 26.09.160(1). Parents are deemed to have the ability to comply with

orders establishing residential provisions, and the burden is on the noncomplying parent to establish by a preponderance of the evidence that he or she lacked the ability to comply with the residential provisions of a court-ordered parenting plan or had a reasonable excuse for noncompliance. RCW 26.09.160(4); *Rideout*, 150 Wn.2d at 352-53.

Here, the superior court found the commissioner's "written and oral findings and rulings are supported by the evidence" and adopted the commissioner's findings and rulings as its own in the order denying revision. The court found that Dugar violated the parenting plan on December 6, December 20, and January 3 by refusing to comply with its residential provisions. And it determined that Dugar acted in bad faith because she did not have a reasonable excuse for the violations, as the paramedics and Ashby's doctor determined that he was not experiencing a medical emergency. Substantial evidence in the record supports the court's findings.

First, substantial evidence supports finding that Dugar violated the parenting plan. The parties do not dispute that they were in phase III of the parenting plan. Under that phase, Ashby had residential time every other weekend, including December 6, December 20, and January 3. But Dugar refused to make their daughters available for Ashby's residential time on those weekends.

Substantial evidence also supports finding that Dugar did not have a reasonable excuse for the violations. Dugar insists that she was justified in suspending visitation under the emergency provision of the parenting plan. But Ashby declared that he was not experiencing any physiological issues and that

7

he was fully able to care for himself and the children, drive, and live a normal life. And again, his statements were supported by the paramedics' determination that he was not experiencing a medical emergency, as well as his December 26 medical records showing that he is current with his medication and that his last seizure occurred over five years ago.

Finally, substantial evidence supports finding that Dugar acted in bad faith. Parents who refuse to perform the duties imposed by a parenting plan without reasonable excuse are per se acting in bad faith. RCW 26.09.160(1). And the record shows that Dugar refused to perform the duties under the parenting plan and did not have a reasonable excuse for doing so.

Still, Dugar argues the trial court ignored evidence showing that Ashby was experiencing a medical emergency on December 6. She points to evidence that gymnastics staff called 911 and that Ashby displayed "slurred speech, confusion, and symptoms consistent with seizure activity." And law enforcement documented that Ashby appeared "lethargic and disoriented" and "encouraged him to allow [Dugar] to take the children home, which he agreed to do." But we do not reweigh the evidence on appeal. *See In re Marriage of Burrill*, 113 Wn. App. 863, 868, 56 P.3d 993 (2002). And, as explained above, the record contains substantial evidence supporting the court's findings.[2]

---

[2] Dugar also argues the court erred in finding that she disobeyed the parenting plan because Ashby "presented no medical evidence that he did not experience a seizure on December 6, 2024." But Ashby presented sufficient evidence that Dugar violated the parenting plan, so it was Dugar's burden as the noncomplying parent to establish that she had a reasonable excuse for noncompliance. RCW 26.09.160(4); *Rideout*, 150 Wn.2d at 352-53.

8

The superior court did not abuse its discretion by denying Dugar's motion to revise the commissioner's order holding her in contempt of the parenting plan.[3]

2. Attorney Fees on Appeal

Ashby requests attorney fees and costs under RCW 29.09.160(1), (2)(b)(ii), and (3)(b).

RCW 26.09.160(1) provides:

> An attempt by a parent . . . to refuse to perform the duties provided in the parenting plan . . . shall be deemed bad faith and shall be punished by the court by holding the party in contempt of court and by awarding to the aggrieved party reasonable attorneys' fees and costs incidental in bringing a motion for contempt of court.

And RCW 26.09.160(2)(b) provides:

> If, based on all the facts and circumstances, the court finds after hearing that the parent, in bad faith, has not complied with the order establishing residential provisions for the child, the court shall find the parent in contempt of court. Upon a finding of contempt, the court shall order:
>       . . . .
>       (ii) The parent to pay, to the moving party, all court costs and reasonable attorneys' fees incurred as a result of the noncompliance.

And finally, RCW 26.09.160(3) provides:

> On a second failure within three years to comply with a residential provision of a court-ordered parenting plan, a motion may be filed to initiate contempt of court proceedings according to the procedure set forth in subsection (2)(a) and (b) of this section. On a finding of contempt under this subsection, the court shall order:
>       . . . .
>       (b) The noncomplying parent to pay, to the other parent or party, all court costs and reasonable attorneys' fees incurred as a result of the noncompliance, and any reasonable expenses incurred in locating or returning a child.

---

[3] Dugar argues that because we should reverse the contempt findings, we should also reverse the associated attorney fees award for Ashby. Because we affirm, we decline to reverse the attorney fee award below.

As the prevailing party in this second contempt action, Ashby is entitled to attorney fees and costs on appeal under and in compliance with RAP 18.1.[4]

Because substantial evidence supports the commissioner's findings that Dugar violated the provisions of the parenting plan, had no reasonable excuse, and acted in bad faith, we affirm the superior court's order denying Dugar's motion to revise the commissioner's contempt order. We also award Ashby attorney fees and costs on appeal.

_____, ACJ

WE CONCUR:

_____
Díaz, J.

_____
Birk, J.

---

[4] Dugar also requests attorney fees on appeal under RAP 18.1 and RCW 26.09.160(7). RCW 26.09.160(7) states that if the court finds a party brought the contempt motion without reasonable basis, the court shall order the moving party to pay to the nonmoving party's costs and reasonable attorney fees and a civil penalty of at least $100. Because we affirm the court's order, we decline to award Dugar attorney fees under this provision.